UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LISA LETT VOORHIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-CV-197-CVE-TLW |
| | ) | |
| BOK FINANCIAL CORPORATION and | ) | |
| BOKF, N.A., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Now before the Court are the following motions: BOK Financial Corporation's Combined Motion for Summary Judgment and Brief in Support (Dkt. # 92); Defendant BOKF, N.A.'s Motion for Summary Judgment and Brief in Support (Dkt. # 93); Plaintiff's Motion for Summary Judgment and Supporting Brief (Dkt. # 99); and Plaintiff's Second Motion for Leave to Amend Complaint (Dkt. # 101).

## I.

Lisa Lett Voorhis and her husband owned a home located at 10662 North 44th West Avenue in Sperry, Oklahoma, and she purchased the home with a loan from BOKF, N.A. (BOKF) in 2007. Dkt. # 93-1, at 2. BOKF is a national bank under the supervision of the Office of the Comptroller of the Currency (OCC). Voorhis sought to refinance the original loan and she submitted an application for refinancing in October 2011. Id. Based on the information provided by Voorhis, BOKF issued an estimated cost summary stating that Voorhis' monthly payment, including principal, interest, and taxes, would be $844.75. Dkt. # 93-2, at 2. The estimated cost summary also states that:

This Estimated Cost Summary Illustration is <u>not</u> a residential mortgage loan application, an official approval or a commitment to lend. The information provided by the Lender reflects estimates of the monthly payment, loan terms and funds to close, based on the information provided. This Summary does not constitute and is not a substitute for the Good Faith Estimate (GFE) of settlement costs provided when a residential mortgage loan application is taken. The actual fees, costs and monthly payment on the specific loan transaction may vary and may include additional fees and costs.

<u>Id.</u> After receiving the initial estimated cost summary, Voorhis received updated estimated cost summaries on October 4, 5, 6, and 7, 2011. Dkt. # 99-7.

On October 5, 2011, Voorhis advised BOKF that she would make a loan application based on the terms stated in the estimated cost summary. Dkt. # 93-1, at 1. BOKF sent a GFE and other disclosures to Voorhis, and the cover letter advised Voorhis that "these disclosures show estimated figures based on information provided at the time of your initial application request and preparation date." Dkt. # 93-3, at 2. The GFE advised Voorhis that her estimated settlement charges for refinancing her home mortgage would be $2,823.46. <u>Id.</u> at 5. Voorhis observed that the GFE and the October 4 and 5, 2011 estimated cost summaries stated that the loan amount would be $114,000, even though she owed slightly more on her original loan, and the October 6 and 7, 2011 estimated cost summaries were corrected to show that the full amount to be refinanced was $114,988. Dkt. # 99-7, at 5, 6. The GFE and the revised GFE advised Voorhis that certain charges could increase up to ten percent at the final settlement. Dkt. # 93-3, at 7. BOKF sent Voorhis a revised GFE on October 6, 2011, showing that the full amount to be financed was $114,988. Dkt. # 93-4, at 7. Voorhis denies that the disclosures provided by BOKF included a waiver of escrow deposit form, and she claims that she would have executed such a document and declined to pay her taxes and insurance premiums through an escrow account. Dkt. # 105-2, at 3. The disclosures sent to plaintiff included a list of settlement service providers, and BOKF informed plaintiff that she could

2

select her own provider or use the provider selected by BOKF.  Dkt. # 93-3.  Voorhis did not select

a settlement service provider and BOKF chose Titan Title & Closing (Titan) to close the loan.  Dkt.

# 93-1, at 3.  Titan has a bank account with BOKF, but BOKF claims that it did not receive anything

of value from Titan as a result of selecting Titan to close the loan.[1]  Id.  Voorhis did not object to

using Titan to close the refinancing transaction.

On October 7, 2011, Voorhis signed and returned the disclosure documents to BOKF, and

she received the HUD-1 settlement statement from BOKF on November 8, 2011.[2]  Dkt. # 93-11.

Voorhis contacted BOKF on November 9, 2011 to question why the cost for title insurance had

increased more than ten percent from the amount stated in the GFE, and she also inquired about a

$25 appraisal fee that was not disclosed in the GFE.  Dkt. # 93-1, at 3-4; Dkt. # 99-12, at 26-29.

BOKF agreed to reduce the title insurance charges, but it informed Voorhis that the appraisal fee

was actually a home evaluation fee that was mandated by federal law.  Dkt. # 93-1, at 3-4.  BOKF

prepared a revised HUD-1 form reflecting that the final amount due by Voorhis at settlement had

been reduced from $3,101.50 to $2,911.50.  Dkt. # 93-12.  The total settlement charges for the loan

refinancing were $5,992.30, and the HUD-1 form clearly states that funds in Voorhis' existing

escrow account would be credited towards the closing costs.  Id. at 3.  This figure included

---

[1]    Plaintiff argues that having a bank account with BOKF is a "thing of value" received by
BOKF in exchange for selecting Titan as the settlement service provider.  Dkt. # 105, at 10.
The term "thing of value" is defined by statute and plaintiff's argument is a legal, rather than
a factual, dispute, and the Court will consider whether having a bank account with a lender
constitutes a "thing of value" as a matter of law.

[2]    Plaintiff disputes BOKF's characterization of the November 8, 2011 document as a
"preliminary" settlement statement.  The document plainly states that it provides the "actual
settlement costs," and it does not appear to be a "preliminary" statement of settlement costs.
Dkt. # 93-11.

3

$3,141.60 for14 months of estimated property taxes and seven months of insurance premiums, in addition to the closing costs that had previously been disclosed to Voorhis. Id. at 4. Voorhis also received a $285 credit from BOKF. Id. at 3. The closing took place on November 14, 2011, and the interest rate on her home loan was reduced to 3.85%.

Voorhis represented in her application for refinancing that she would use the mortgaged property as her primary residence, even though she was not living in the residence when the application was submitted. Dkt. # 93-6. Voorhis claims that she informed BOKF that she was residing in Baldwin, Missouri when she submitted the refinancing application, and BOKF erroneously listed the mortgaged property as a her principal address. Dkt. # 105-2, at 4. In her deposition, she acknowledged that she did not directly contact anyone at BOKF to tell them that she did not live in Sperry, but she claims that BOKF was on notice of this fact based on documents she had submitted with her loan application. Dkt. # 99-12, at 7-9. However, in order to obtain a lower interest rate applicable only to residential loans, Voorhis was required to execute an affidavit of occupancy acknowledging that:

> The Property is or will be Borrowers' Primary Residence. This means at least one of the Borrowers who executes the Note and Deed of Trust or Mortgage will take title to and occupy the Property. The Property is now occupied as the Borrowers' principal residence or will be occupied as Borrowers' principal residence no later than sixty (60) days after this date or sixty (60) days after the Property shall first become ready for occupancy as a habitable dwelling, whichever is later and shall continue to occupy the property as Borrowers' principal residence for at least one year after the date of occupancy. The Borrowers have no present intention that is contrary to this representation.

Dkt. # 93-3, at 8. In the mortgage agreement, the parties agreed that Voorhis would use the mortgaged property as her principal residence within 60 days of executing the mortgage agreement "unless extenuating circumstances exist which are beyond Borrower's control." Dkt. # 93-20, at 8.

Voorhis claims that she intended[3] to reside in the mortgaged property, but her husband was unable to find work in Oklahoma and they remained in Missouri where he was then working.  Dkt. # 99-12, at 3-6.  Voorhis and her husband later moved to New Mexico, and she has no knowledge as to whether her husband was actually looking for work in Oklahoma.  Id. at 19.  Voorhis is an attorney and she is licensed to practice in Oklahoma, but she did not seek employment in Oklahoma.  Id. Voorhis did reside in Sperry for approximately two months in 2012 when her husband moved to New Mexico and established a residence, but she did not intend to reside at the mortgaged property permanently.  Id. at 4.

Upon refinancing her home loan, Voorhis' monthly payment dropped from $1,066.54 to $816.40.  Dkt. # 99-3.  BOKF used funds in the escrow account to pay Voorhis' property taxes on the mortgaged property in January 2012, but the payment was submitted nine days late and Osage County imposed a late fee of $45.42.  Dkt. # 93-13, at 14.  BOKF paid the penalty and did not charge Voorhis for the late payment.[4]  Id. at 3.  Voorhis' monthly payment increased to $935.33 beginning in October 2012 due to increased property taxes and insurance premiums.  BOKF also initially underestimated Voorhis' property taxes for 2011 at the time of closing, and this added to the escrow shortfall.  Id. at 3-4; Dkt. # 93-15, at 2.  On September 26, 2012, Voorhis sent an e-mail to Dana Ware, an escrow specialist for BOKF, and expressed her dissatisfaction with BOKF's

---

[3]   In her deposition, Voorhis stated that the had an "intent" to return to Oklahoma but, when she executed the affidavit of occupancy, she had no "expectation" that either she or her husband would find employment in Oklahoma.  Dkt. # 99-12, at 13.

[4]   Plaintiff claims that she cannot verify whether the late fee was "billed back" to her escrow account by defendant.  Dkt. # 105, at 15.  However, she has no evidence to show that BOKF charged the late fee to her escrow account and plaintiff's speculation to not give rise to a genuine dispute of material fact.

5

explanation for the increased monthly payments, and she advised BOKF that she was paying the increased monthly payment under protest. Dkt. # 93-17. She asked BOKF to investigate matter and she claimed that BOKF's decision to credit escrow funds from her original mortgage towards the closing costs of the refinancing transaction "has largely caused the current escrow shortage." Id. On September 28, 2012, BOKF sent a letter to Voorhis stating that it would "review the mortgage loan files and communicate a response no later than 30 days following receipt of the complaint letter." Dkt. # 93-18. Voorhis' complaint was referred to Cathy Gaines for review, and Gaines sent a written response to Voorhis. Gaines explained that BOKF's standard procedure for a refinancing loan is to credit any escrow funds from the initial mortgage to the closing costs for the refinancing. Dkt. # 93-19. Gaines stated that the escrow shortage resulted from an underestimation of property taxes for 2011 and increased taxes and insurance premiums. Id.

On October 18, 2012, Voorhis filed this case against BOKF and BOK Financial Corporation in the United States District Court for the District of New Mexico alleging claims under the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601-2617 (RESPA), the Truth in Lending Act, 15 U.S.C. § 1601 et seq. (TILA), and the Oklahoma Secure and Fair Enforcement for Mortgage Licensing Act, OKLA. STAT. tit. 59, § 2095-2095.26 (the Act). Defendants filed a motion to transfer venue to the United States District Court for Northern District of Oklahoma, and Voorhis opposed the motion. Dkt. ## 36, 39. On April 4, 2013, the case was transferred to the Northern District of Oklahoma, and Voorhis filed an amended complaint (Dkt. # 49) adding claims for alleged violations of the Oklahoma Consumer Credit Code, OKLA. STAT. tit. 14A, Art. 1 to 9, the Oklahoma Consumer Protection Act, OKLA. STAT. tit. 15, § 752 et seq. (OCPA), the New Mexico Unfair Practices Act, N.M. STAT. ANN. § 57-12-1 et seq. (UPA), and claims for conversion and equitable accounting

6

under Oklahoma and New Mexico law.  On July 12, 2013, BOKF filed counterclaims (Dkt. # 69) against Voorhis alleging that she committed fraud and constructive fraud by falsely representing that she intended to reside in the mortgaged property and that this misrepresentation caused BOKF to refinance Voorhis' loan at a lower rate than if she had disclosed that would not actually use the mortgaged property as her primary residence.

## II.

Plaintiff requests leave to file a second amended complaint adding a claim for chose in action under Oklahoma law, and she argues that this claim is based on the same set of facts as her conversion and equitable accounting claims.  Defendants oppose plaintiff's motion to amend and argue that plaintiff's request to file a second amended complaint is untimely.

Under Fed. R. Civ. P. 15(a)(2), after the opposing party has served a responsive pleading, "a party may amend its pleadings only with the opposing party's written consent or the court's leave."  Minter v. Prime Equipment Co., 451 F.3d 1196, 1204 (10th Cir. 2006).  The decision to grant leave to amend is within the discretion of the district court but, when leave is sought, it should be "freely given when justice so requires."  Bradley v.Val-Majias, 379 F.3d 892, 900-91 (10th Cir. 2004).  Leave to amend may be denied if the proposed amendment would be futile and would not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Services, Inc., 175 F.3d 848, 859 (10th Cir. 1999).  Denial of a motion to amend may also be appropriate if the moving party unduly delayed when seeking leave to amend and has no adequate explanation for the delay.  Minter, 451 F.3d at 1206.  "In the Tenth Circuit, untimeliness alone is an adequate reason to refuse leave to amend."  Duncan v. Manager, Dept' of Safety, City and County of Denver, 397 F.3d 1300, 1315 (10th Cir. 2005).

7

The Court entered a scheduling order (Dkt. # 48) setting a deadline of May 17, 2013 for the parties to file motions for joinder of additional parties or to amend the complaint. Plaintiff's motion to amend (Dkt. # 101) was filed on August 25, 2013, and she filed the motion after reviewing BOKF's motion for summary judgment. In its motion for summary judgment, defendant cited an Oklahoma Supreme Court decision stating that a claim for conversion, such as alleged by plaintiff, applies only to "tangible personal property," and a plaintiff must allege a claim for chose in action to recover "intangible personal property" such as money. See Dkt. # 93, at 31 (citing Shebester v. Triple Crown Insurers, 826 P.2d 603, 608 (Okla. 1992)). Plaintiff argues that she filed her motion to amend three days after reading BOKF's motion for summary judgment, and this shows that she did not unduly delay when filing the motion. Dkt. # 130, at 3-4. She acknowledges that she is an attorney, but she claims that she does not reside in Oklahoma and that she is unfamiliar with Oklahoma tort law. Id. This does not adequately explain her delay in filing a motion to amend. Plaintiff holds herself out as an attorney who is licensed to practice in Oklahoma, and it is reasonable for the Court to assume that she is familiar with Oklahoma tort law. Dkt. # 115-2, at 1 (plaintiff's employer represents that plaintiff "holds current active licenses to practice law in New Mexico, Oklahoma and Colorado"). Plaintiff has cited no authority suggesting that a motion to amend to add new claims can be deemed timely because a party realizes after reading the opposing party's motion for summary judgment that an existing claim will likely be unsuccessful. The Court finds that plaintiff has failed to offer a reasonable explanation for her delay in filing a motion to amend, and her motion for leave to file a second amended complaint (Dkt. # 101) should be denied as untimely.

### III.

Plaintiff has filed a motion for summary judgment on her federal law claims and on defendant's counterclaims for fraud and negligent misrepresentation.  BOKF seeks summary judgment on all of plaintiff's claims, but it does not request summary judgment on its counterclaims. BOK Financial Corporation argues that it had no involvement with plaintiff's refinancing transaction and it is not a proper party.

### A.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317.  "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted).  "The mere existence of a scintilla of evidence in support of the

plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

## B.

Defendant BOK Financial Corporation argues that it "had absolutely nothing to do with the facts and circumstances giving rise to this action" and it is not a proper party. Plaintiff responds that defendant incorrectly contends that it is a "non-operating company" and some of the witnesses with relevant information about plaintiff's claims may be employees of "Bank of Oklahoma" or the "Bank of Oklahoma Mortgage Group," and she asserts that she has adequately alleged claims against BOK Financial Corporation.[5] Dkt. # 107, at 2.

BOK Financial Corporation has submitted the affidavit of Steven E. Nell, Chief Financial Officer and Executive Vice President of BOK Financial Corporation. Dkt. # 92-1. Nell states that "BOK Financial Corporation is a non-operating financial holding company formed, organized and doing business in the State of Oklahoma . . . ." Id. at 2. BOK Financial Corporation and BOKF are

---

[5]     To the extent that plaintiff attempts to rely on the allegations of her amended complaint as evidence, a party opposing summary judgment "may not rest upon 'the mere allegations or denials of [her] pleading," and the nonmoving party "must go beyond the pleadings and establish through admissible evidence, that there is a genuine [dispute as to a material fact] that must be resolved by the trier of fact." Panis v. Mission Hills Bank, N.A., 60 F.3d 1486, 1490 (10th Cir. 1995). The Court will consider plaintiff's allegations in order to discern the nature of her claims against BOK Financial Corporation, but the allegations will not be treated as evidence independently sufficient to defeat a motion for summary judgment.

separate and distinct legal entities, and BOK Financial Corporation does not directly conduct lending activities.  Id.  Plaintiff claims that at least five witnesses have been identified as employees of "Bank of Oklahoma Mortgage Group" or "Bank of Oklahoma," and she believes that these witnesses are employed by BOK Financial Corporation.  Dkt. # 107, at 2.  Plaintiff has produced BOK Financial Corporation's Form 10-K filed with the Securities and Exchange Commission, and she claims that BOK Financial Corporation admits that it "operates three principal lines of business." Dkt. # 107-4, at 3.  However, the Form 10-K also describes BOK Financial Corporation as a "financial holding company," and it identifies BOKF as a wholly owned subsidiary that operates regional banks such as the Bank of Oklahoma.  Id.  Plaintiff also cites evidence showing that she received correspondence from "BOK Financial," and she claims that this is sufficient to give rise to a genuine dispute as to whether BOK Financial Corporation is a proper defendant.  Dkt. # 107, at 2-3.  The same correspondence cited by plaintiff states at the bottom of the page that "[s]ervices [are] provided by BOKF, NA, a division of BOK Financial Corporation."  Dkt. # 93-18.

Plaintiff has produced no evidence that BOK Financial Corporation had any involvement with the financial transaction at issue in this case.  The mere fact that documents reference "BOK Financial" does not show that BOK Financial Corporation participated in the refinancing of plaintiff's home mortgage.  BOK Financial Corporation has submitted the affidavit of Martin McCurdy, senior vice president of BOKF, N.A., who states that the "term 'BOK Mortgage' is used to describe the mortgage servicing division of BOKF, NA."  Dkt. # 120-2, at 2.  Although certain documents received by plaintiff mention "BOK Financial" or "Bank of Oklahoma Mortgage Group," many of those same documents clearly advise plaintiff that her home mortgage was held and serviced by BOKF.  See Dkt. # 111-11 ("Be assured that Bank of Oklahoma (BOKF) takes your

complaint seriously"); Dkt. # 93-3 ("BOKF, NA DBA Bank of Oklahoma has received your mortgage loan application . . ."); Dkt. # 93-18 ("[s]ervices provided by BOKF, NA, a division of BOK Financial Corporation . . ."); Dkt. # 99-7, at 2-6 (five estimated cost summaries identifying "BOKF, NA DBA Bank of Oklahoma" as lender); Dkt. # 100-4 (affidavit of occupancy identifies the lender as "BOKF, NA DBA Bank of Oklahoma"). It is unclear from plaintiff's amended complaint if she is seeking to hold BOK Financial Corporation liable under a theory of derivative liability, but she makes no argument in her response to BOK Financial Corporation's motion for summary for such liability and the Court will not construct an argument on plaintiff's behalf. The evidence shows that plaintiff refinanced her home with BOKF and that the corporate identity of the lender was clearly disclosed in the documents sent to plaintiff. Defendant BOK Financial Corporation had no role in the refinancing of plaintiff's home and its motion for summary judgment (Dkt. # 93) should be granted.

## C.

BOKF seeks summary judgment on all of plaintiff's claims and argues that there is no evidence establishing that it violated plaintiff's rights under state or federal law.[6] Plaintiff argues that BOKF violated RESPA, TILA, and Oklahoma and New Mexico law by charging undisclosed

---

[6]     BOKF argues that federal and state laws concerning a consumer's rights in a residential mortgage transaction do not apply because plaintiff made a misrepresentation concerning her intent to reside at the mortgaged property. Dkt. # 93, at 16, 24, 27, 28. At a minimum, there is an issue of fact as to whether plaintiff made a false representation about her intention to occupy the mortgaged property as her primary residence. See infra at III.D. The summary judgment record also contains no evidence that plaintiff rented the mortgaged property or used it for a commercial purpose, even if she did not actually live in the residence. For the purpose of ruling on the pending motions, the Court will assume that state and federal laws relating to residential home mortgages are applicable.

fees, paying her property taxes late, misappropriating funds from her escrow account, and selecting

a title services provider that had a banking relationship with BOKF.

RESPA Claim

Plaintiff alleges that defendant violated numerous provisions of RESPA and regulations

promulgated pursuant to RESPA.  Defendant argues that §§ 2603, 2604, and 2609 of RESPA do not

give rise to a private right of action and, even if plaintiff could be relying on other sections of

RESPA, plaintiff has not produced evidence that could establish that defendant violated RESPA.


The Court notes that it is doubtful that § 2604 of RESPA or 24 C.F.R. § 3500.7[7] were

intended to create a private right of action for technical violations of RESPA.  Collins v. FHMA-

USDA, 105 F.3d 1366, 1368 (11th Cir. 1997); Carter v. Bank of America, N.A., 888 F. Supp. 2d 1,

25 (D.D.C. 2012); Dalton v. Countrywide Home Loans, Inc., 828 F. Supp. 2d 1242, 1249-50 (D.

Colo. 2011); Nelson v. JPMorgan Chase Bank, N.A., 707 F. Supp. 2d 309, 317 (E.D.N.Y. 2009).

However, the Tenth Circuit has not considered this issue and the Court will consider the merits of

plaintiff's claim under these provisions.  Section 2604 requires a lender to provide "a good faith

estimate of the amount or range of charges for specific settlement services the borrower is likely to

incur in connection with the settlement" of a home loan.  12 U.S.C. § 2604(c).  Plaintiff asserts that

defendant violated 24 C.F.R. § 3500.7 by creating its own cost estimate summary form that failed

---

[7]     Part 3500 of Title 24 of the Code of Federal Regulations contains the implementing
regulations for RESPA, and it is referred to collectively as "Regulation X."  The Court will
discuss the applicable regulations, if necessary, in addressing each aspect of plaintiff's
RESPA claim.

to provide all of the required information.[8]  Dkt. # 105, at 22.  Section 3500.7 states that the "GFE Form is set out in Appendix C to this part."  24 C.F.R. § 3500.7(d).  The mere fact that defendant did not use the precise form provided in Appendix C does not constitute a per se violation of § 3500.7, because the regulation provides that the "loan originator must prepare the GFE in accordance with the requirements of this section and the Instructions in Appendix C" and the instructions "allow for flexibility in the preparation and distribution of the GFE."  Id.  Plaintiff argues that BOKF violated § 3500.7(f) by sending multiple estimated cost summary forms and GFEs.  Dkt. # 99, at 23.  Section 3500.7(f) states that a lender is bound by the settlement charges, within certain tolerances, stated in the GFE unless the lender has documented a reason for providing a revised GFE.[9]  In this case, there were two GFEs issued and the second GFE was issued at the request of plaintiff to clarify the amount of the loan.  BOKF did not issue multiple GFEs in an attempt to inflate fees and it had a legitimate purpose for issuing the revised GFE, and plaintiff has not established a violation of § 3500.7(f).  Plaintiff claims that defendant subsequently increased fees and added an unlawful appraisal fee after sending her a GFE.  Dkt # 99, at 24.  Section 3500.7 makes it unlawful for a loan originator to charge an appraisal fee as a condition of issuing the GFE, but such fees may be charged as part of the closing costs if the loan applicant chooses to proceed

---

[8]    Plaintiff also argues that defendant violated § 3500.7 by taking money out of her existing escrow account, but § 3500.7 deals solely with the content and disclosure procedures for a good faith estimate.  Any unauthorized withdrawal of escrow funds would not constitute a violation of § 3500.7.

[9]    Section 3500.7(f) does not mention the issuance of multiple estimated cost summaries and it refers only to the binding GFE.  Even if BOKF improperly issued multiple non-binding estimated cost summaries, a violation of § 3500.7(f) would occur only if BOKF improperly issued a revised GFE, and the multiple estimated cost summaries are irrelevant to this aspect of plaintiff's RESPA claim.

with the loan.  24 C.F.R. § 3500.7(b)(4).  The fact that an appraisal fee was charged as part of the final settlement does not establish a violation of § 3500.7.  Plaintiff argues that defendant attempted to increase the fee for title services beyond the ten percent increase allowed under the regulation, but the evidence shows that defendant actually reduced this fee when plaintiff pointed out the error.  Dkt. # 93-11; Dkt. # 93-12.  Plaintiff has suffered no actual damages as a result of any technical violation of § 3500.7 and she could not prevail under § 2604 even if she could maintain a private right of action under the statute or implementing regulations.

Plaintiff argues that BOKF violated § 2605(e) of RESPA by failing to respond to her written demand for an inquiry into alleged mishandling of her escrow account.  If a borrower submits a "qualified written request . . . relating to the servicing of [a] loan," a lender must acknowledge the request within five days of receipt of the correspondence and must respond to the request within 60 days.  12 U.S.C. § 2605(e)(1)(A).  Under this section, a plaintiff is entitled to recover only actual damages caused by a RESPA violation, and statutory damages are available only in cases involving a pattern or practice of violations.  Toone v. Wells Fargo Bank, N.A., 716 F.3d 516 (10th Cir. 2013).  On September 6, 2012, plaintiff sent an e-mail to defendant questioning why her monthly payment had increased from $816 to $935 per month.  Defendant investigated plaintiff's complaint and sent her a letter on October 9, 2012, in response to her inquiry.  Although plaintiff disputes BOKF's explanation, BOKF complied with § 2605(e) by issuing a timely response to plaintiff's complaint.  Plaintiff claims that BOKF sent the response to the wrong address, but she cites no authority suggesting that this would constitute a violation of § 2605(e).  Plaintiff has also provided no evidence that she suffered actual damages due to defendant's handling of her complaint, and she has not shown that she would be entitled to relief under § 2605(e).

Plaintiff claims that defendant improperly managed her escrow account and made a late property tax payment, and she alleges this BOKF conduct violated § 2605(g) of RESPA.  Under § 2605(g), a loan servicer "shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner" if this is part of the borrower's agreement with the loan servicer.  BOKF does not dispute that it made a late property tax payment and that plaintiff incurred a late fee, but BOKF has shown that it paid the late fee and plaintiff incurred no additional expense due to the late payment of her property taxes. Dkt. # 93-13, at 14.  Plaintiff claims that she suffered damages because the late payment of property taxes caused her to lose a federal income tax deduction. Dkt. # 105, at 23 n.10.  However, BOKF responds that plaintiff could not have claimed the tax deduction on her 2011 tax return because the taxes were not due until January 2012.  The tax receipt for the January 2012 tax payment shows that BOKF is correct and, even if the tax payment was submitted nine days late, plaintiff has not shown that she would have been entitled to a tax deduction on her 2011 tax return if the taxes were timely paid in January 2012. Dkt. # 93-13, at 14.  Plaintiff has not shown that she suffered any damages from the untimely payment of property taxes in January 2012 and she could not prevail on a claim under § 2605(g).

Finally, plaintiff claims that BOKF required her to use a title service that had a "banking relationship" with BOKF, and this constituted a violation of § 2607 of RESPA.  Under § 2607(a), "[n]o person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person."  Plaintiff argues that the title company, Titan, had a bank account with defendant and that this banking relationship qualifies as a "thing of value" under § 2607(a).  The term "thing of value" is

16

defined as "any payment, advance, funds, loan, service, or other consideration . . . ."  12 U.S.C. § 2602(2).  To establish a violation of § 2607(a), a plaintiff must show "1) a payment or a thing of value; 2) made pursuant to an agreement to refer settlement business; and 3) an actual referral." Egerer v. Woodland Realty, Inc., 556 F.3d 415, 427-28 (6th Cir. 2009).  Section 2607(c) does not prohibit "the payment to any person . . . for services actually performed."  The evidence shows that Titan served as the settlement services provider and plaintiff does not dispute that Titan performed these services.  There is no evidence that Titan paid a kickback or referral to the Bank or that the Bank received anything in exchange for selecting Titan to provide title services.  Plaintiff has produced no evidence that BOKF received anything of value for the act of selecting Titan to provide settlement service provider for the refinancing of plaintiff's mortgage, and plaintiff cannot establish a claim under § 2607.

TILA Claim

Plaintiff asserts that BOKF violated TILA by adding a $25 appraisal fee that was not disclosed on the GFE.  BOKF responds that plaintiff's settlement costs substantially decreased from the GFE to the final settlement, and that plaintiff has not shown that BOKF violated TILA.

"Congress enacted TILA in 1968 'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." Sanders v. Mountain America Federal Credit Union, 689 F.3d 1138, 1141 (10th Cir. 2012).  "To fulfill that purpose, TILA requires lenders to provide borrowers with certain clear and accurate disclosures . . . ."  Rosenfield v. HSBC Bank, USA, 681 F.3d 1172, 1179 (10th Cir. 2012).  TILA is remedial in nature and it is construed liberally in favor of the consumer.  Johnson v. Riddle, 305 F.3d 1107, 1117 (10th Cir. 2002).

Plaintiff claims that BOKF added a $25 appraisal fee to the closing costs that was not initially disclosed in the GFE, and that this untimely disclosure of the appraisal fee violated 15 U.S.C. § 1638. For a residential mortgage loan, a lender must advise the consumer of:

> the aggregate amount of settlement charges for all settlement services provided in connection with the loan, the amount of charges that are included in the loan and the amount of such charges the borrower must pay at closing, the approximate amount of the wholesale rate of funds in connection with the loan, and the aggregate amount of other fees or required payments in connection with the loan.

15 U.S.C. § 1638(a)(17). The HUD-1 form provided to plaintiff shortly before the closing of the refinancing transaction shows that, even with the $25 appraisal fee, her aggregate settlement costs under the category of "Charges that in Total Cannot Increase More than 10%" actually decreased 11.73% from the estimate provided in the GFE. Dkt. # 93-12, at 5. The evidence shows that defendant provided an estimate of the aggregate amount of the closing costs and that BOKF did not increase the specified fees more than ten percent from the GFE, and plaintiff did not suffer any damages as a result of inclusion of a $25 appraisal fee in the final closing of the refinancing transaction.

<u>Oklahoma Secure and Fair Enforcement for Mortgaging Licencing Act (the Act)</u>

Defendant argues that plaintiff's claim under the Act should be dismissed, because the statute is inapplicable to federally regulated banks and it does not provide a private right of action. The Act exempts "entities described in divisions (1), (2) and (3) of subparagraph [18] of Section 2095.2" from liability under the Act. These entities include a "depository institution" as defined in the Federal Deposit Insurance Act. The term "depository institution" means "any national bank, any Federal savings association, and any Federal branch." 12 U.S.C. § 1813(c)(4). BOKF is a national bank that is regulated by the OCC, and it is exempt from the requirements of the Act. Even if

plaintiff could maintain a private right of action under the Act, BOKF could not be held liable for alleged violations of the Act and BOKF is entitled to summary judgment on this claim.[10]

Oklahoma Consumer Credit Code

BOKF argues that the Oklahoma Consumer Credit Code is inapplicable to it, because BOKF is a national bank under the regulatory authority of the OCC. The Oklahoma Consumer Credit Code expressly states that it "does not apply to . . . (5) loans made to enable the debtor to build or purchase a residence or to refinance such loan when made by a lender whose loans are supervised by an agency of the United States . . . ." OKLA. STAT. tit. 14A, § 1-202(5).[11] BOKF is a national bank that is regulated by an agency of the United States, and the Oklahoma Consumer Credit Code does not apply to loans issued by BOKF. Plaintiff cannot maintain a claim against BOKF under the Oklahoma Consumer Credit Code.

Oklahoma Consumer Protection Act

BOKF argues that the OCPA does not apply to the refinancing transaction, because the transaction is regulated by federal law and such transactions are expressly exempt from coverage under the OCPA. Plaintiff responds that the OCPA is routinely applied to businesses subject to federal regulation, and she asks the Court to consider the merits of her OCPA claim. Section 754

---

[10]   Neither plaintiff's motion for summary judgment (Dkt. # 99) nor her response to BOKF's motion for summary judgment (Dkt. # 105) actually contains any argument as to the merits of her claim under the Act. Even if she could proceed with a claim under the Act, plaintiff has failed to offer any argument showing that defendant actually violated the Act.

[11]   The Court notes that plaintiff cites the statute and represents that it does apply to loans made by a lender that is supervised by an agency of the United States. Dkt. # 105, at 28. The statute is clear that it "does not apply" to such lenders. OKLA. STAT. tit. 14A, § 1-202(5).

of the OCPA states that "[n]othing in this act shall apply to . . . [a]ctions or transactions regulated under laws administered by the Corporation Commission or any other regulatory body or officer acting under statutory authority of this state of the United States . . . ." OKLA. STAT. tit. 15, § 754. The statute applies to "[a]ctions or transactions," rather than entities, and it is apparent that the refinancing transaction is a transaction governed by federal law.  Plaintiff has alleged claims under RESPA and TILA, and there is no dispute that these federal laws are applicable to the refinancing transaction.  The OCPA does not apply to the refinancing transaction, and plaintiff cannot maintain a claim against BOKF under the OCPA.

New Mexico Unfair Practices Act

Defendant argues that the parties' Security Instrument includes a choice of law provision and the parties agreed that Oklahoma law would apply to any dispute arising out of the mortgage. Defendant also argues that the UPA contains an exemption for transactions "expressly permitted by a regulatory body of . . . the United States," and BOKF complied with federal law governing the refinancing of a home mortgage.  N.M. STAT. ANN. § 57-12-7.  Plaintiff responds that she is not disputing the validity of the mortgage documents and the choice of law provision is inapplicable. She generally argues that defendant engaged in unlawful or prohibited conduct that is not authorized under federal law, and the statutory exemption under the UPA does not apply.

The Security Instrument executed by the parties sets out the rights and obligations of both parties as to the mortgaged property, and it states that it "shall be governed by federal law and the law of the jurisdiction in which the property is located."  Dkt. # 93-20, at 12.  There is no dispute that the property described in the Security Instrument is located in Sperry, Oklahoma.  However, the Court declines to rule on the applicability of the choice of law provision when it is apparent that the

UPA does not apply to the aspects of the refinancing transaction about which plaintiff complains. Neither plaintiff's motion for summary judgment nor her response to BOKF's motion for summary judgment identifies any specific acts that allegedly violate the UPA, and the only reasonable inference is that plaintiff is relying on the same facts on which her federal law claims are based. The Court has found that defendant committed no violations of RESPA, TILA, or the regulations accompanying those statutes, and actions that are expressly permitted by New Mexico or federal law cannot form the basis for a UPA claim. Coll v. First American Title Ins. Co., 642 F.3d 876 (10th Cir. 2011). The UPA does not provide a remedy for "actions or transactions expressly permitted under laws administered  by a regulatory body of . . . the United States," and BOKF is entitled to summary judgment on plaintiff's UPA claim.

Conversion and Equitable Accounting

BOKF argues that plaintiff cannot maintain a claim for conversion under Oklahoma or New Mexico law, because plaintiff has not alleged that BOKF wrongfully exerted control or dominion over the tangible property of plaintiff. BOKF also argues that plaintiff has failed to establish that she has an outstanding balance with BOKF and, even assuming that she were entitled to equitable relief, she could not prevail on a claim for equitable accounting.

Under Oklahoma law, "[c]onversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein," but this includes only "tangible personal property" such as goods or chattels. Welty v. Martinaire of Oklahoma, Inc., 867 P.2d 1273, 1275 (Okla. 1994). Money may not be "converted" as a matter of Oklahoma law. Shebester, 826 P.2d at 608. Under New Mexico law, "[c]onversion is the unlawful exercise of dominion or control over property belonging to another in defiance of the owner's rights . . . ."

Alcantar v. Sanchez, 257 P.3d 966, 971 (N.M. Ct. App. 2011).  Money or commercial paper are considered property for the purpose of a conversion claim under New Mexico law.  Aragon v. General Elec. Credit Corp., 557 P.2d 572, 574 (N.M. Ct. App. 1976).

        Plaintiff could not establish a conversion claim as a matter of Oklahoma law, because she is alleging that defendant exercised dominion or control over money belonging to plaintiff. Oklahoma law is clear that money is not tangible personal property and plaintiff cannot not prevail on a conversion claim under Oklahoma law.  As to her conversion claim under New Mexico law, plaintiff has offered no evidence that BOKF wrongfully exercised control or dominion over property belonging to plaintiff.  Plaintiff argues that BOKF misappropriated funds in her escrow account when closing the refinancing transaction.  See Dkt. # 99, at 18 n.4.  This does not constitute conversion, because the funds in plaintiff's escrow account were credited towards the closing costs of the refinancing transaction and plaintiff was given notice before the closing that this transfer would occur.  Dkt. # 93-12, at 3 (HUD-1 settlement statement shows that $2,820.74 would be transferred from escrow account and credited to closing costs).  If this transfer had not occurred, plaintiff would have been required to pay an additional $2,820.74 at closing and she raised no objection to the escrow transfer at closing.  Plaintiff also argues that BOKF wrongfully increased her monthly payment by approximately $120 without a legitimate basis.  Dkt. # 99, at 18 n.2. However, the Court has already found that BOKF has offered a reasonable explanation for the increase in plaintiff's monthly payment, and the increase in plaintiff's monthly payment does not show that BOKF unlawfully exercised control or dominion over plaintiff's property.  Plaintiff has produced no evidence showing that BOKF exercised control or dominion over any property of plaintiff in defiance of her rights, and BOKF is entitled to summary judgment on plaintiff's

conversion claims under Oklahoma and New Mexico law.  Based on this finding, plaintiff could not establish that BOKF is required to provide an equitable accounting, because BOKF is not in possession of any property or funds belonging to plaintiff.  Roberts v. American Medical Sec., Inc., 2012 WL 2126947 (N.D. Okla. June 11, 2012) (explaining that Oklahoma law requires that a plaintiff seeking equitable accounting establish that there is a balance due before a claim for equitable accounting can be considered).

### D.

Plaintiff argues that BOKF has failed to establish that she committed fraud or made a negligent misrepresentation by executing an affidavit of occupancy in which she represented that she intended to reside in the mortgaged property.  She claims that she intended to reside in the mortgaged property but extenuating circumstances prevented her from living in Oklahoma.  She also argues that BOKF's counterclaims should be treated as a claim for breach of contract, rather than fraud, because BOKF is alleging that plaintiff breached the parties' agreement after completion of the refinancing transaction.

Oklahoma law is clear that a fraud claim may not be based solely on an alleged breach of contract.  Edwards v. Farmers Ins. Co., 2009 WL 4506218 (N.D. Okla. 2009); Fox v. Overton, 534 P.2d 679, 681 (Okla. 1975).  The wrong giving rise to a fraud claim must be independent of the breach of contract and the aggrieved party must allege damages that are separate from any harm caused by the breach of contract.  McGregor v. National Steak Processors, Inc., 2012 WL 2012 WL 314059 (N.D. Okla. Feb. 1, 2012).  In this case, plaintiff submitted an application for refinancing and represented that the mortgaged property was her primary residence.  She executed an affidavit

of occupancy before the note and mortgage were executed and affirmed that she either resided in the mortgaged property or would reside in the mortgaged property within 60 days after the mortgaged property became habitable.  Dkt. # 93-3, at 8.  Based on this information, BOKF offered plaintiff a lower interest rate applicable only to residential property that would be used by the borrower as his or her primary residence.  Dkt. # 111-9, at 6.  If plaintiff had not intended to reside in the property, she would have been required to refinance the property at a higher interest rate.  Id. at 6.  BOKF's claims are based on the formation of a contract, rather than the fact of plaintiff's breach of contract, and BOKF claims that it suffered an injury because of plaintiff's misrepresentations before the refinancing transaction was completed.  This is distinct from any eventual breach of contract and BOKF has properly alleged tort claims arising out of a misrepresentation before the completion of the refinancing transaction.

Under Oklahoma law, a plaintiff must prove by clear and convincing evidence four elements to prevail on a claim of fraud: "(1) a false misrepresentation of a material fact, (2) made as a positive assertion either known to be false or recklessly made without knowledge of the truth, (3) made with the intention of causing the other party to act, and (4) which is relied on by the other party to his or her own detriment."  Gish v. ECI Servs. of Oklahoma, Inc., 162 P.3d 223, 228 (Okla. Civ. App. 2006).  Constructive fraud, as opposed to actual fraud, is "a breach of legal or equitable duty to the detriment of another, which does not necessarily involve any moral guilt, intent to deceive, or actual dishonesty of purpose."  Croslin v. Enerlex, Inc., 308 P.3d 1041, 1046 (Okla. 2013).  A claim of constructive fraud may be based on a negligent misrepresentation.  Id.  "Fraud is never presumed and each of the elements must be proved by clear and convincing evidence."  Bourke v. Western Bus. Prods., Inc., 120 P.3d 876, 886 (Okla. Civ. App. 2005).

24

Plaintiff has submitted an affidavit stating that she and her husband intended to reside in the mortgaged property, but he lost his job in Oklahoma and he was able to find a new job near St. Louis, Missouri.[12]  Dkt. # 99-6, at 5.  After the refinancing transaction was closed, her husband found a new job in New Mexico, and she temporarily resided in the mortgaged property while he established a residence in New Mexico.  Id.  Plaintiff's deposition testimony could not reasonably support an inference that she intended to reside in the mortgaged property on a permanent basis, and it is clear that she intended to stay in the mortgaged property only temporarily.  Dkt. # 99-12, at 5. While they were living in Missouri, plaintiff was not looking for work in Oklahoma and she does not know if her husband was seeking employment in Oklahoma.  Id. at 19.  She also testified that she and her husband both prefer living in New Mexico.  Id. at 18.  Based on this evidence, a reasonable factfinder could question whether plaintiff actually intended to reside in the mortgaged property at the time she applied for refinancing of her home mortgage, because there is evidence showing that plaintiff and her husband were taking no steps towards obtaining employment in Oklahoma and moving into the mortgaged property on a permanent basis.  This is a genuine dispute of material fact and plaintiff's request for summary judgment on BOKF's counterclaims of fraud and constructive fraud should be denied.

---

[12]     Plaintiff argues that BOKF waived its right to assert counterclaims based on the affidavit of occupancy, because it was aware from the time it received plaintiff's application to refinance that she was not living in the mortgaged property.  Dkt. # 99, at 28.  This could give rise to a genuine dispute of material fact if plaintiff had asserted an affirmative defense of waiver to the counterclaims, but it would not require the Court to enter summary judgment in her favor.  BOKF has submitted evidence showing that plaintiff used addresses in Missouri and New Mexico as her mailing address, but plaintiff failed to contact BOKF and advise BOKF that she did not actually reside in Sperry.  However, plaintiff has not filed an answer to the counterclaims and she has not raised an affirmative defense of waiver.

**IT IS THEREFORE ORDERED** that BOK Financial Corporation's Combined Motion for Summary Judgment and Brief in Support (Dkt. # 92) and Defendant BOKF, N.A.'s Motion for Summary Judgment and Brief in Support (Dkt # 93) are **granted**; plaintiff's Motion for Summary Judgment and Supporting Brief (Dkt. # 99) is **denied**.

**IT IS FURTHER ORDERED** that Plaintiff's Second Motion for Leave to Amend Complaint (Dkt. # 101) is **denied**.

**IT IS FURTHER ORDERED** that, based on the foregoing, Plaintiff's Motion in Limine to Exclude Testimony of Martin McCurdy (Dkt. # 84) and Defendant BOKF N.A.'s Motion in Limine (Dkt. # 85) are **moot**.

**IT IS FURTHER ORDERED** that BOKF shall advise the Court no later than the close of business on **November 7, 2013** if it intends to proceed with its counterclaims, and the pretrial conference will be reset if necessary.

**DATED** this 4th day of November, 2013.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE